## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MTE HOLDINGS LLC, *et al.*,[1] | ) | Case No. 19-12269 (KBO) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| RIVERSTONE CREDIT MANAGEMENT, LLC as Administrative and Collateral Agent, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 19-50792 (KBO) |
| v. | ) | |
| | ) | |
| MDC ENERGY LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| MDC ENERGY LLC and MTE HOLDINGS LLC, | ) | |
| | ) | |
| Counterclaim-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RIVERSTONE CREDIT MANAGEMENT, LLC as Administrative and Collateral Agent, | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |
| | ) | |

## MDC ENERGY LLC'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS AND COUNTERCLAIM PLAINTIFF'S MTE HOLDINGS LLC'S COUNTERCLAIMS

Defendant and Counterclaim-Plaintiff MDC Energy LLC ("MDC"), through its

---

[1] The debtors in these jointly administered chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: MTE Holdings LLC ("MTE") (7894); MTE Partners LLC ("MTE Partners") (1158); Olam Energy Resources I LLC ("Olam") (0770); MDC Energy LLC ("MDC") (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644) (collectively, the "Debtors"). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

undersigned counsel, hereby files its Answer, Affirmative Defenses, and Counterclaims to the Complaint for Declaratory Relief of Plaintiff Riverstone Credit Management, LLC ("Riverstone" or the "Agent"), as Administrative and Collateral Agent for the lenders (the "Lenders") under the Credit Agreement, filed November 12, 2019 (the "Complaint") and Counterclaim-Plaintiff MTE Holdings LLC ("MTE"),[2] through its undersigned counsel hereby files its Counterclaims to the Complaint.[3]

## ANSWER

1.      Paragraph 1 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 1 and states that the action speaks for itself.

2.      MDC denies the allegations in Paragraph 2, except admits only that MTE has borrowed funds from the Lenders and states that the documents referenced in Paragraph 2 speak for themselves.

3.      MDC denies the allegations in Paragraph 3.

4.      MDC denies the allegations in Paragraph 4, except to the extent that such allegations contain legal conclusions as to which no response is required and admits only that the representatives of MDC and MTE took the position that the Pledged Equity Vote was void *ab initio*.

5.      MDC admits the allegations in Paragraph 5 of the Complaint.

6.      MDC admits the allegations in Paragraph 6 of the Complaint.

---

[2] Plaintiffs' counsel has stipulated to MTE's intervention in this adversary proceeding as a counterclaim-plaintiff.  A consent motion to intervene shall be filed promptly.

[3] Except where otherwise noted, all capitalized terms should be ascribed the same meaning given to them in the Complaint.

7.      MDC denies the allegations in Paragraph 7, except admits only that MTE filed its Objection on November 6, 2019, and states that the Objection speaks for itself.

8.      MDC denies the allegations in Paragraph 8, except admits only that it filed chapter 11 proceedings in the United States Bankruptcy Court for the District of Delaware on November 8, 2019.

9.      Paragraph 9 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 9.

10.     Paragraph 10 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 10.

11.     MDC denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint and states that Paragraph 11 contains legal conclusions as to which no response is required and further states that the Credit Agreement speaks for itself.

12.     MDC admits the allegations in Paragraph 12 of the Complaint, except denies the last sentence in Paragraph 12.

13.     MDC admits the allegations in Paragraph 13 of the Complaint.

14.     Paragraph 14 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 14.

15.     Paragraph 15 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 15.

16.     Paragraph 16 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 16.

17.     Pursuant to Fed. R. Bankr. P. 7008(a) and Local Rule 7008-1, MDC consents to

the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

18.     Paragraph 18 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC admits only that on September 17, 2018 the parties thereto entered into the Credit Agreement and the Collateral Agreement, and states that the agreements speak for themselves, and otherwise denies the allegations in Paragraph 18.

19.     Paragraph 19 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 19 and states that the Credit Agreement speaks for itself.

20.     MDC denies the allegations in Paragraph 20 of the Complaint.

21.     Paragraph 21 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC states that the Credit Agreement speaks for itself and denies the remainder of the allegations in Paragraph 21.

22.     MDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

23.     Paragraph 23 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 23 and states that the referenced agreements speak for themselves and that MDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 with respect to the Lenders.

24.     Paragraph 24 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 24

and states that the referenced agreements speak for themselves and that MDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 with respect to the Lenders.

25.    Paragraph 25 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 25 and states that the referenced agreements speak for themselves.

26.    MDC denies the allegations in Paragraph 26 of the Complaint, except to the extent that such allegations contain legal conclusions as to which no response is required.

27.    MDC denies the allegations in Paragraph 27 of the Complaint, except to the extent that such allegations contain legal conclusions as to which no response is required and that MDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 with respect to the reason for the existence of certain covenants contained in the Credit Agreement.

28.    MDC denies the allegations in Paragraph 28 of the Complaint.

29.    MDC denies the allegations in Paragraph 29 of the Complaint, except admits only that MTE entered into the First Amendment, which speaks for itself.

30.    MDC denies the allegations in Paragraph 30 of the Complaint, and states that the First Amendment speaks for itself.

31.    MDC denies the allegations in Paragraph 31 of the Complaint, and states that the First Amendment speaks for itself.

32.    MDC denies the allegations in Paragraph 32 of the Complaint, and states that the First Amendment speaks for itself.

33.    MDC denies the allegations in Paragraph 33 of the Complaint, and states that the

First Amendment speaks for itself.

34.     MDC denies the allegations in Paragraph 34 of the Complaint.

35.     MDC denies the allegations in Paragraph 35 of the Complaint, except to the extent that such allegations contain legal conclusions as to which no response is required and states that the documents referenced speak for themselves.

36.     MDC denies the allegations in Paragraph 36 of the Complaint, except to the extent that such allegations contain legal conclusions as to which no response is required.

37.     MDC denies the allegations in Paragraph 37 of the Complaint, except to the extent that such allegations contain legal conclusions as to which no response is required and states that the documents referenced speak for themselves.

38.     MDC denies the allegations in Paragraph 38 of the Complaint, except to the extent that MDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 with respect to the Agent's and the Lenders' decision making.

39.     MDC denies the allegations in Paragraph 39 of the Complaint, except to the extent that such allegations contain legal conclusions as to which no response is required and to the extent that MDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 with respect to the knowledge of the Agent and the Lenders.

40.     Paragraph 40 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 40 and states that the First Amendment speaks for itself.

41.     MDC denies the allegations in Paragraph 41 of the Complaint, and states that the Credit Agreement and Borrowing Notice speak for themselves.

42.     Paragraph 42 of the Complaint contains legal conclusions as to which no response

is required.  To the extent a response is required, MDC denies the allegations in Paragraph 42.

43.     MDC denies the allegations in Paragraph 43 of the Complaint, except admits only that on or about February 27, 2019, the Lenders funded $40 million to MTE and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 with respect to the knowledge of the Lenders.

44.     MDC denies the allegations in Paragraph 44 of the Complaint, and states that the Credit Agreement and Borrowing Notice speak for themselves.

45.     Paragraph 45 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 45.

46.     MDC denies the allegations in Paragraph 46 of the Complaint, except admits only that on or about March 28, 2019, the Lenders funded $20 million to MTE and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 with respect to the knowledge of the Lenders.

47.     MDC denies the allegations in Paragraph 47 of the Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 with respect to the beliefs of the Lenders, and states that the referenced documents speak for themselves.

48.     Paragraph 48 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 48 and states that the documents referenced speaks for themselves.

49.     MDC denies the allegations in Paragraph 49 of the Complaint, except admits only that on or about April 11, 2019, the Lenders funded $60 million to MTE and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 with

7

respect to the knowledge of the Lenders.

50.    MDC denies the allegations in Paragraph 50 of the Complaint, and states that the Borrowing Notices speak for themselves.

51.    MDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51.

52.    MDC denies the allegations in Paragraph 52 of the Complaint.

53.    Paragraph 53 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 53.

54.    Paragraph 54 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 54.

55.    Paragraph 55 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 55.

56.    Paragraph 56 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 56, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 with respect to the beliefs of the Lenders.

57.    Paragraph 57 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 57.

58.    MDC denies the allegations in Paragraph 58 of the Complaint.

59.    Paragraph 59 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 59 and states that the documents referenced speak for themselves.

60.    Paragraph 60 of the Complaint contains legal conclusions as to which no response

is required. To the extent a response is required, MDC denies the allegations in Paragraph 60 and states that the Credit Agreement speaks for itself.

61.     Paragraph 61 of the Complaint contains legal conclusions as to which no response is required. To the extent a response is required, MDC denies the allegations in Paragraph 61 and states that the Credit Agreement speaks for itself.

62.     MDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 with respect to the purported concerns and denies the remainder of the allegations in Paragraph 62.

63.     Paragraph 63 of the Complaint contains legal conclusions as to which no response is required. To the extent a response is required, MDC denies the allegations in Paragraph 63 and states that the documents referenced speak for themselves.

64.     Paragraph 64 of the Complaint contains legal conclusions as to which no response is required. To the extent a response is required, MDC denies the allegations in Paragraph 64.

65.     Paragraph 65 of the Complaint contains legal conclusions as to which no response is required. To the extent a response is required, MDC denies the allegations in Paragraph 65.

66.     MDC denies the allegations in Paragraph 66 of the Complaint, except to the extent it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 with respect to the knowledge of the Agent and states that the documents referenced speak for themselves.

67.     MDC denies the allegations in Paragraph 67 of the Complaint, to the extent it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 with respect to the knowledge of the Agent and states that the documents referenced speak for themselves.

68.     MDC denies the allegations in Paragraph 68 of the Complaint, except to the extent that Paragraph 68 contains legal conclusions as to which no response is required and to the extent it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 with respect to the actions of the Agent and the Lenders, and states that the documents referenced speak for themselves.

69.     Paragraph 69 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 69 and states that the documents referenced speak for themselves.

70.     Paragraph 70 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 70.

71.     MDC denies the allegations in Paragraph 71 of the Complaint, except to the extent that Paragraph 71 contains legal conclusions as to which no response is required and to the extent it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 with respect to the considerations of the Agent, and states that the documents referenced speak for themselves.

72.     MDC denies the allegations in Paragraph 72 of the Complaint.

73.     Paragraph 73 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 73.

74.     Paragraph 74 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 74.

75.     Paragraph 75 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 75, except to the extent that MDC lacks knowledge or information sufficient to form a belief as to

10

the truth of the allegations in Paragraph 75 with respect to the knowledge of the Agent, and states that the documents referenced speak for themselves.

76.     Paragraph 76 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 76.

77.     MDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 with respect to the actions of the Agent and Natixis and denies the remainder of the allegations in Paragraph 77.

78.     MDC denies the allegations in Paragraph 78 of the Complaint, except to the extent that Paragraph 78 contains legal conclusions as to which no response is required and states that the documents referenced speak for themselves.

79.     MDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 with respect to the concerns of the Agent and the Lenders and denies the remainder of the allegations in Paragraph 79.

80.     MDC denies the allegations in Paragraph 80 of the Complaint.

81.     MDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 with respect to the determinations of the Lenders and denies the remainder of the allegations in Paragraph 81, and states that the referenced proposal speaks for itself.

82.     MDC denies the allegations in Paragraph 82 of the Complaint, and states that the referenced letter speaks for itself.

83.     MDC denies the allegations in Paragraph 83 of the Complaint, and states that the Notice speaks for itself.

84.     MDC denies the allegations in Paragraph 84 of the Complaint, and states that the

11

drafts of a Limited Forbearance Agreement speak for themselves.

85.     MDC denies the allegations in Paragraph 85 of the Complaint, and states that the referenced letter speaks for itself.

86.     Paragraph 86 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 86 of the Complaint.

87.     Paragraph 87 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 87 of the Complaint.

88.     MDC denies the allegations in Paragraph 88 of the Complaint, and states that the Notice speaks for itself.

89.     MDC denies the allegations in Paragraph 89 of the Complaint, except to the extent it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 with respect to the concerns of the Agent and states that the documents referenced speak for themselves.

90.     Paragraph 90 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 90.

91.     Paragraph 91 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 91.

92.     Paragraph 92 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 92.

93.     MDC denies the allegations in Paragraph 93 of the Complaint.

94.     MDC denies the allegations in Paragraph 94 of the Complaint.

95.     MDC denies the allegations in Paragraph 95 of the Complaint.

96.     MDC denies the allegations in Paragraph 96 of the Complaint.

97.     MDC denies the allegations in Paragraph 97 of the Complaint, except to the
extent that it lacks knowledge or information sufficient to form a belief as to the truth of the
allegations in Paragraph 97 with respect to the goals or intentions of the Lenders or the Agent.

98.     MDC denies the allegations in Paragraph 98 of the Complaint.

99.     MDC denies the allegations in Paragraph 99 of the Complaint.

100.    MDC denies the allegations in Paragraph 100 of the Complaint, and states that the
referenced letter speaks for itself.

101.    MDC denies the allegations in Paragraph 101 of the Complaint, except it admits
only that on November 8, 2019 MDC filed chapter 11 proceedings, and states that the documents
referenced speaks for themselves.

102.    MDC denies the allegations in Paragraph 102 of the Complaint.

## CLAIM FOR DECLARATORY RELIEF

103.    With respect to the allegations in Paragraph 103 of the Complaint, MDC repeats
and realleges its responses to Paragraphs 1-102 of the Complaint.

104.    Paragraph 104 of the Complaint contains legal conclusions as to which no
response is required.  To the extent a response is required, MDC denies the allegations in
Paragraph 104.

105.    Paragraph 105 of the Complaint contains legal conclusions as to which no
response is required.  To the extent a response is required, MDC denies the allegations in
Paragraph 105.

106.    Paragraph 106 of the Complaint contains legal conclusions as to which no

response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 106.

107.    Paragraph 107 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 107.

108.    MDC denies the allegations in Paragraph 108 of the Complaint.

109.    MDC denies the allegations in Paragraph 109 of the Complaint, except it admits only that MDC and its representatives have disputed the validity and effectiveness of the Written Consent and the MDC Amendment.

110.    Paragraph 110 of the Complaint contains legal conclusions as to which no response is required.  To the extent a response is required, MDC denies the allegations in Paragraph 110.

111.    MDC denies the allegations in Paragraph 111 of the Complaint.

<u>**GENERAL DENIAL**</u>

Unless specifically admitted herein, MDC denies each and every allegation in the Complaint and demands strict proof thereof.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

1.    Riverstone's Complaint fails to state a claim for which relief can be granted.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

2.    Riverstone's Complaint fails to join a necessary party as a defendant.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE**

3.    Riverstone's claims are barred by the doctrines of laches, waiver and/or estoppel.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE**

14

4.      Riverstone's claims are barred because it acted in bad faith.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

5.      Riverstone's claims are barred by the doctrine of unclean hands.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

6.      Riverstone's claims are barred by its failure to substantially perform.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

7.      MDC expressly reserves the right to assert any additional affirmative defenses.

### COUNTERCLAIMS

8.      MDC Energy LLC ("MDC") and MTE Holdings LCC ("MTE") hereby plead the following counterclaims (the "Counterclaims") and asserts the following against Riverstone Credit Management, LLC ("Riverstone" or the "Plaintiff").[4]

### INTRODUCTION

9.      The issue before the Court is simple and straightforward: at all relevant times MTE was the sole member of MDC. Despite Plaintiff's purported attempt to exercise MTE's right to vote its membership interest in MDC, those voting rights remained property of MTE. At best, Plaintiff obtained the temporary right to control those voting rights. Thus, when MTE commenced its chapter 11 case on October 22, 2019, any right Plaintiff had to control MTE's property was immediately enjoined by the automatic stay. Consequently, MTE regained its control over the voting rights associated with its membership interests in MDC. Alternatively, upon the commencement of MTE's chapter 11 case, Section 543 required that Riverstone shall

---

[4] Given the special purpose and expedited nature of this adversary proceeding to determine whether MDC was properly authorized to commence its chapter 11 case, MDC and MTE have asserted only those counterclaims directly related to the issues of authority of MDC. MTE and MDC specifically reserve their rights pursuant to Fed. R. Bankr. P. 7013 to assert any and all claims in the future other than those claims that directly relate to the ultimate issue of authority.

turnover any right of control it had over MTE's property, including those voting rights.  To the extent such turnover did not effectuate automatically, the Court should order such transfer promptly.

## THE PARTIES

10.  MDC is a Delaware limited liability company that explores and produces oil and gas, and operates from Midland, Texas, in the Permian Basin.

11.  MTE is a Delaware limited liability company and the sole member of MDC.

12.  Upon information and belief, Riverstone is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York, New York.  Riverstone is a subsidiary of Riverstone Holdings LLC.

## JURISDICTION AND VENUE

13.  The Court has jurisdiction over the Counterclaims pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012.  Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Fed. R. Bankr. P. 7001(9).

14.  This matter is a core proceeding within the meaning of 28 U.S.C § 157(b)(2).

15.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), MDC and MTE consent to the entry of a final order by the Court in connection with the Counterclaims to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

16

16.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

17.     On October 21, 2019, Riverstone purported to exercise certain rights on behalf of the Lenders concerning MTE's membership interests in MDC, including the right to vote MTE's membership interests in MDC.

18.     Notwithstanding Riverstone's actions, it has never foreclosed on MTE's membership interests in MDC.  At all times, MTE retained ownership of its membership interests in MDC.  Although Riverstone purported to take steps to exercise certain voting rights pursuant to the Collateral Agreement "as if it were the absolute owner" of MTE's membership interests, at no time did ownership of the membership interests transfer from MTE to Riverstone.  Further, at no time were MTE's membership interests in MDC registered in the name of Riverstone or any other party.

19.     Likewise, Riverstone never obtained a separate property interest in MTE's right to vote its membership interests in MDC.  At best, it obtained a right to control such voting rights.

20.     Riverstone, however, did not vote those voting rights at any meeting of MDC's members or shareholders.

21.     Consequently, Riverstone's purported attempt to exercise those voting rights on October 21, 2019 was void and never effective, and MTE at all times retained the right to vote its membership interests in MDC.

22.     On October 22, 2019, MTE file a petition pursuant to chapter 11 of the Bankruptcy Code to seek protection from further injurious misconduct by the Lenders.

23.     Given that Riverstone never foreclosed on MTE's membership interests in MDC, those membership interests and the voting rights appurtenant thereto remained property of

17

MTE's bankruptcy estate and subject to the automatic stay under the Bankruptcy Code. Therefore, even if Riverstone's purported exercise of voting rights on October 21 was effective under Delaware law, once MTE filed its bankruptcy petition, any further attempt by Riverstone to exercise control over MDC through MTE's property was prohibited by the automatic stay.  At that point, MTE regained control of the voting rights associated with its membership interests in MDC (if it ever ceased to be in control of those rights in any way).

24.     Alternatively, if the automatic stay did not prohibit Riverstone from further exercising control over MDC (assuming it ever effectively had such control), then Section 543 of the Bankruptcy Code effectuated a turnover of any rights Riverstone had obtained over MTE's property and prohibited it from taking any further action to exercise control over MTE's property.

25.     Accordingly, at a minimum, whether by operation of Sections 362(a)(3) or 543 of the Bankruptcy Code, immediately after the filing of its bankruptcy petition, MTE had full control over its membership interests in MDC, including, but not limited to, the right to vote those interests.

26.     After the filing of its bankruptcy petition, MTE exercised its voting rights over its membership interests in MDC to undo the resolutions that Riverstone purported to authorize on October 21 (assuming that Riverstone's actions were legally effective).  Specifically, after its bankruptcy filing, on October 23, 2019, MTE, as sole member of MDC, executed a written consent, effective as of October 22, 2019, that authorized, resolved, and ratified the following actions only to the extent that the underlyingactions referenced were previously effective and not void *ab initio*:

a.      Rescinded and vacated Riverstone's October 21 Consent in its entirety;

b.      Registered all membership interests in MDC in the name of MTE;

c.      Authorized MDC to terminate the engagement letter between MDC and Opportune LLP;

d.      Rescinded and vacated the Amendment No. 1 of the Third Amended and Restated Limited Liability Company Agreement for MDC that Riverstone purported to adopt, and accepted and adopted the terms of the Third Amended and Restated Limited Liability Company Agreement for MDC;

e.      Removed the directors that Riverstone purported to appoint and restored MTE as the member-manager of MDC;

f.      Removed the chief restructuring officer that Riverstone purported to install at MDC, and revoked and rescinded any actions taken by him;

g.      Withdrew MDC's authority to enter into certain insurance agreements that Riverstone purported to authorize;

h.      Withdrew MDC's authority to enter into an agreement with Evercore that Riverstone purported to authorize; and

i.      Withdrew MDC's authority to enter into an amendment of the RBL Credit Agreement that Riverstone purported to authorize.

The October 22, 2019 written consent is attached hereto as Exhibit A.

27.      Accordingly, immediately prior to MDC filing its bankruptcy petition, MTE was in full control of its membership interests in MDC, and had the corporate authority to authorize MDC to file its bankruptcy petition.

28.      On November 8, 2019, MTE, in its capacity as the sole member and manager of MDC, passed resolutions authorizing MDC to file a petition for relief pursuant to Chapter 11 of

the Bankruptcy Code.  Subsequently on that same day, MDC filed a petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

## COUNT I
### (Declaratory Judgment)

29.    MDC repeats and realleges paragraphs 1-28 of the Counterclaims as if fully set forth herein.

30.    An actual and substantial controversy has arisen and exists between MDC, MTE, and Riverstone regarding whether, assuming it ever had such control, the automatic stay applies to bar Riverstone from continuing to assert control over the right to vote MTE's membership interests in MDC.

31.    A debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" under 11 U.S.C. § 541(a)(1).  This includes MTE's membership interests and all rights appurtenant thereto, including voting rights.

32.    Further, pursuant to 11 U.S.C. § 362(a)(3), the automatic stay "operates as a stay, applicable to all entities, of," *inter alia*, "any act to . . . exercise control over property of the estate[,]" including intangible property.  Thus, the automatic stay bars a creditor from exercising corporate governance rights over an entity the debtor owns.

33.    Although Riverstone purported to exercise voting rights prior to MTE commencing its bankruptcy case, because MTE's membership interests in MDC remain property of MTE's bankruptcy estate, any attempt by Riverstone to exercise voting control of MDC post-petition violates the automatic stay.

34.    Riverstone has not foreclosed on MTE's membership interests in MDC.  Nor did it register MTE's membership interests in MDC in its own name.  Riverstone, however,

continues to assert that it has the right to exercise control over the voting rights for MTE's membership interests in MDC, and that the automatic stay does not apply to bar it from doing so.

35.    The imposition of the automatic stay effectively terminated any purported authority with which Riverstone acted in accordance.  Thus, upon the filing of its bankruptcy case, MTE regained its right to exercise the voting rights associated with its membership interests in MDC.

36.    As a result, there exists an actual, substantial, and continuing controversy between MDC, MTE and Riverstone, who have adverse legal interests, regarding whether the automatic stay applies to bar Riverstone from continuing to assert control over the voting rights in MDC, which has caused MDC and MTE to suffer actual and threatened injury that requires a declaration of the rights of the parties under 28 U.S.C. § 2201.

37.    Riverstone's conduct has caused doubt and confusion as to who properly exercises control over the voting rights in MDC following the commencemtnt of MTE's bankruptcy case, which has created significant disruption in MDC's and MTE's business.

38.    WHEREFORE, MDC and MTE respectfully request a declaratory judgement declaring that:  (a) MTE's membership interest in MDC remains property of the estate and is subject to the automatic stay; (b)Riverstone is barred from continuing to assert control over the voting rights in MDC; (c) MTE is the rightful and proper owner of the voting rights in MDC and the sole person or entity with the right to vote the membership interests in MDC; and (d) the commencement of MDC's bankruptcy case on November 8, 2019 was properly authorized by MTE.

## COUNT II
(Declaratory Judgment/Turnover)

39.     MDC and MTE repeat and reallege paragraphs 1-38 of the Counterclaim as if fully set forth herein.

40.     An actual and substantial controversy has arisen and exists between MDC, MTE, and Riverstone regarding whether, assuming it ever had such control, Riverstone is barred from continuing to assert control over the right to vote MTE's membership interests in MDC pursuant to 11 U.S.C. § 543 because to the extent Riverstone did obtain any rights to vote the membership interests in MDC, those rights automatically reverted back to MTE's estate under Section 543 of the Bankruptcy Code.

41.     Section 543 of the Bankruptcy Code requires that upon learning of the commencement of a bankruptcy case by the debtor, a custodian of property of the debtor shall turn over such property to the debtor in a chapter 11 case.

42.     Riverstone maintains that it was authorized under the Credit Agreement and Collateral Agreement to exercise the right to vote MTE's membership interests in MDC for the purpose of enforcing the Lenders' lien against those interests.  Riverstone has acknowledged that MTE's membership interests in MDC remain estate property.  Indeed, Riverstone has never taken any actions to foreclose or otherwise register MTE's membership interests in MDC.  Thus, Riverstone's right to the membership interests is that of a custodian under 11 U.S.C. § 101(11)(C).

43.     Riverstone, however, continues to assert that it has the right to exercise control over the right to vote MTE's membership interests in MDC and that the automatic stay does not apply to bar it from doing so.

44.     Instead, following the commencement of MTE's chapter 11 case, any ability to exercise control over the voting rights in MDC were automatically turned over to MTE or, in the alternative, must now be turned over to MTE.

45.     As a result, there exists an actual, substantial, and continuing controversy between MDC, MTE, and Riverstone, who have adverse legal interests, regarding whether Riverstone has already, or alternatively, shall now turn over control of MTE's membership interests to MTE's estate under Section 543 of the Bankruptcy Code.

46.     This controversy has caused MDC and MTE to suffer actual and threatened injury that requires a declaration of the rights of the parties under 28 U.S.C. § 2201.  Riverstone's conduct has caused doubt and confusion as to who properly exercises control over the right to vote MTE's membership interests in MDC, which has created significant disruption in MDC's and MTE's business.

47.     WHEREFORE, MDC and MTE respectfully request a declaratory judgement declaring that:  (a) Section 543 operated to turn over to MTE automatically any control right Riverstone had over MTE's membership interests in MDC, or (b) alternatively, that Riverstone shall effectuate such turn over promptly, and (c) MDC's commencement of its bankruptcy case was properly authorized by MTE.

## **PRAYER FOR RELIEF**

**WHEREFORE,** MDC and MTE respectfully request that the Court enter judgment against Riverstone and provide the following relief:

(a) Declaratory judgments in accordance with above requested relief; and

(b) Such other and further relief as the Court deems just and proper.

Dated:  November 19, 2019
       Wilmington, Delaware

*/s/ Daniel B. Butz*

Robert J. Dehney (No. 3578)
Eric D. Schwartz (No. 3134)
Daniel Butz (No. 4227)
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email:  rdehney@mnat.com
       eschwartz@mnat.com
       dbutz@mnat.com

- and -

Marc E. Kasowitz (admitted *pro hac vice*)
Andrew K. Glenn (admitted *pro hac vice*)
Kenneth R. David (admitted *pro hac vice*)
Matthew B. Stein (admitted *pro hac vice*)
David J. Mark (admitted *pro hac vice*)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
Email:  AGlenn@kasowitz.com
       MStein@kasowitz.com
       DMark@kasowitz.com

**PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**